(No. 13273.—Writ awarded.)

THE PEOPLE *ex rel.* John G. Gamber, State Fire Marshal, Petitioner, *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF GALLATIN *et al.* Respondents.

*Opinion filed October 23, 1920.*

1. MANDAMUS—*the State fire marshal may ask for writ to compel county supervisors to repair court house and jail.* The duty of county supervisors to keep public buildings fit for the uses declared by law is mandatory and is owing to the public at large and not merely to the citizens of the county, and the State fire marshal, as a citizen and a tax-payer, may petition for a writ of *mandamus* to compel the board of supervisors of any county to make necessary repairs to the court house and county jail.

2. SAME—*what does not justify supervisors in refusing to make repairs—costs.* The fact that one-half of the members of the board of supervisors favor removal of the county seat does not justify them in voting against a resolution to make necessary repairs to the court house and county jail, and the costs of a *mandamus* proceeding to compel the board to make such repairs will be assessed against such members where the evidence shows a clear breach of duty on their part.

ORIGINAL petition for *mandamus.*

MARSH WISEHEART, State's Attorney, C. F. MORTIMER, and J. E. BARTLEY, for petitioner.

CREIGHTON & THOMAS, COOPER & BURGESS, and GEO. B. & GEO. M. GILLESPIE, for respondents.

Mr. CHIEF-JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 12, 1920, by leave of court a petition of the People of the State of Illinois, on the relation of John G. Gamber, State fire marshal, a citizen and tax-payer of the State, was filed, praying for a writ of *mandamus* directed to the board of supervisors of the county of Gallatin and S. R. Keasler, M. W. Pritchett, I. F. Smith, George A. Pyles and James Doherty, members of said board, commanding them to place or cause to be placed the court house and jail of said county in a state of reasonable repair, and to provide and keep in repair suitable fireproof safes or offices for the county clerk, county treasurer, recorder, sheriff and the clerks of the several courts of record in said county. The petition alleges that the county of Gallatin is under township organization; that the court house and jail were constructed about 1860; that both are out of repair and in a condition to be exposed to the hazards of fire; that none of the rooms or offices of the county officers are fireproof nor provided with fireproof safes, fireproof vaults or other fireproof places for the preservation and protection from fire of the books, records, files and papers required by law to be kept; that the records, files and papers are kept unprotected in any manner from destruction by fire, and many of them are scattered over the building, and in the jury room are piled promiscuously and scattered about on the floor in the county court room; that the jail is unfit for use, and the only means of entering the hall on the second floor, which is designed for prisoners, is a wooden door of the width and height not exceeding three feet and is approached by stairs which are inflammable and dangerous; that the buildings are wired for electricity in an unsafe manner, causing danger of fire; that there are ten

members of the board of supervisors, and the board has refused by a tie vote to make any repairs to the buildings or to perform the statutory duty in respect to fireproof safes or offices, as recommended by a committee of the board, the above named five members of the board voting against the performance of their duty.

An answer was filed purporting to be for the board of supervisors and the members of the board, but it has been shown that the board did not authorize an appearance or answer for it and that no authority was given to appear or answer for any members of the board except those above named who voted against the resolution to make repairs. The answer denies that the financial condition of the county is such that it can without a vote of the people make the repairs on the building directed by the State fire marshal without causing a deficiency of funds to meet the ordinary expenses of the county. It denies that the court house is in a very bad state of repair, and alleges that the jail is not used for the confinement of prisoners but the prisoners of the county are sent to and kept in the jail in Harrisburg, in Saline county. The answer neither admits nor denies that the files and records are scattered over the floors and around the court house, as alleged in the petition, and avers that the suit was instituted to embarrass and interfere with the people in causing the submission of the question to the voters whether they will re-locate the county seat at another place. A replication to the answer was filed and the cause was referred to Hon. Albert Watson to take the evidence and it has been taken and certified to the court.

It is contended that the State fire marshal was not authorized to institute the suit, but that question was determined when leave was given to file the petition, and when it was filed no demurrer was interposed. Whether or not the relator, as State fire marshal, could ask the court to compel the performance of the duty, he is a citizen and tax-payer and the duty enjoined upon the board of super-

visors is a duty to the public, the performance of which may be compelled by any citizen without showing that he has any legal interest in the suit. (*People* v. *Harris,* 203 Ill. 272.) Section 26 of chapter 34 of our statutes provides that it shall be the duty of the county board of each county to erect or otherwise provide when necessary and the finances of the county will justify it, and keep in repair, a .suitable court house, jail and other necessary county buildings, and to. provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff and the clerks of said courts, and to provide and keep in repair, when the finances of the county permit, suitable fireproof safes or offices for the county clerk, county treasurer, recorder, sheriff and clerks of said courts. The duty to keep the buildings fit for the uses declared by law and to provide fireproof safes and vaults is owing to the public at large. The jail is not designed solely for the restraint of citizens of the county, and any citizen of the State is or may be at any time directly interested in the preservation of records, whether of real estate, wills or legal proceedings. The duty being to the public and not merely to the citizens of Gallatin county, it is not an answer to say that the duty may be performed if they choose, and if they wanted it performed they might elect other supervisors to perform it. The suit is on behalf of the people and was properly brought, and the board of supervisors and the members of the board, except the five above named, not having answered, their default is entered.

The answer denies that the financial condition of the county is such that it can, without a vote of the people, make the repairs on the buildings ordered by the fire marshal without causing a deficiency of funds to meet the ordinary expenses of the county, but relies upon the claim that a vote may be taken for a removal of the county seat to another point. The substance of the answer is, that the

finances of the county will permit the board to build a new
court house and jail in another place but will not be suffi-
cient to repair the existing court house and jail, and the.
testimony of the defendants who have answered shows that
the real reason for their refusal to perform their duty is
to bring about a removal of the county seat to Ridgway.
The defendants might well be held to their position that a
new court house and jail could be built in another place,
but the evidence shows that the finances of the county will
permit putting the buildings in a reasonable state of repair
although not perhaps sufficient to make all of the extended
repairs specified by the fire marshal.   There have been two
elections taken in Gallatin county for the removal of the
county seat, one in 1898 (*Village of Ridgway* v. *County of
Gallatin,* 181 Ill. 521,) and the other in 1908, both for re-
moval to the village of Ridgway, and at each election the
proposition was defeated.   (*Devous* v. *Gallatin County,* 244
Ill. 40.)   The fact that the defendants and other citizens
want to have the county seat removed affords no reason for
refusal to perform the duty enjoined by the statute.   There
was a flood in 1913 in the Ohio, Wabash and Mississippi
valleys which was the greatest ever known and the levee
was cut and Shawneetown was inundated, so that it was
necessary to take the records to the second floor of the
court house.   There has been no flood since that time, and
if there is a probability that another may occur it might
be a reason for further precautions to care for the files and
records but no excuse for not repairing the buildings.

Without going into much detail, the evidence shows that
the court house is in a dilapidated condition; that the roof
leaks and the building is generally out of repair; that win-
dows are broken and plastering is falling off; that it is
wired in an unsafe manner, without proper insulation; that
there are two little rooms for records, arched over, adjoin-
ing the offices of the clerks of the courts, and the arch is
cracked from one end to the other; that there is wooden

shelving in the room adjoining the office of the circuit court; that files and records are lying in the supervisors' and grand jury rooms on chairs, tables and wooden shelves on the wall, with no sort of protection against fire. The jail is a two-story building of brick lined with wood, and the first story is used as a dwelling for the sheriff, except one room for women prisoners. The second story is for male prisoners and is reached by a narrow, steep stairway, at the top of which there is a narrow trap-door to a landing. Leading from the landing to a prisoner's room, about 28 by 7 feet, with narrow windows, there is a hole closed by a door through which one has to crawl. There are two cells which can be entered from the hall by crawling into them, and they have narrow slits, four or five inches wide and about one foot long, for the admission of air. The jail has been condemned by grand juries for many years and the judges have refused to consign prisoners to such a place. That the buildings are old, dilapidated and out of repair and parts of them decayed, that the jail is a disgrace to a civilized community, and that the files and records of the county and the courts are not preserved, cared for and protected can not be denied, and the only reason for refusing to perform the statutory duty is the desire of five members of the board of supervisors to secure the removal of the county seat to Ridgway by neglect and refusal to comply with the law. The duty enjoined by the statute is mandatory and not permissive, and it is not left to the discretion of the board whether the duty shall be performed or not. The board is invested with discretion as to materials and methods, but there is no discretion as to the duty, which is ministerial and may be compelled by *mandamus*. It is true that the court will not control the exercise of discretion so far as discretion is given to the board, but in this case there is no question of that kind. There is simply a refusal on the part of five members of the board to perform their duty

and a determination to defy the authority of the law and to set the statute at naught. It is not a question here with what materials or how the necessary repairs shall be made, but only whether they shall be made at all. No superintendence of details is required, because it is only a matter of common sense and common knowledge as to what constitutes fireproof safes and fireproof vaults and when a building is in a reasonable state of repair. The question not being how and with what detail the duty shall be performed but only whether the law affords any remedy for a refusal to perform the duty, its performance may be enforced by *mandamus*.

It is suggested, but not argued, that the act creating the office of State fire marshal and prescribing his duties is void, but it is immaterial whether any provision of that act is void or not. No question as to the validity of the act was raised in any manner in the answer, which only offered excuses for not complying with the statutory duty, and, as already stated, the suit is by the people and the public right may be enforced by any citizen.

A writ of *mandamus* is awarded commanding the board of supervisors of Gallatin county to proceed to place or cause to be placed the court house and jail in a state of reasonable repair and to provide and keep in repair suitable fireproof safes or offices for the county clerk, county treasurer, recorder, sheriff and the clerks of the several courts of record of the county. The costs of suit will be taxed to the defendants M. W. Pritchett, S. R. Keasler, I. F. Smith, George A. Pyles and James Doherty and judgment entered against them for such costs. *Writ awarded.*