Request of Governor and Council,
No. 5084.

OPINION OF THE JUSTICES.

Submitted August 24, 1962.

Answer returned August 29, 1962.

The following answer was returned:

*To his Excellency the Governor and the Honorable Council*:

The undersigned Justices of the Supreme Court submit the following answers to the questions contained in your resolution of August 15, 1962 concerning the validity of the action taken by the State Board of Education in selecting a site for the Technical Institute in the city of Concord. The State Board of Education was authorized and directed to establish one technical institute "to be centrally located where in the opinion of the board it will serve most advantageously the purpose of this chapter." RSA 188-A:2 (supp); Laws 1961, 267:1. The purpose of this act is to "finance facilities for the preparation of youth and adults for productive employment as technicians and skillful workers . . . " to promote the general economy of the state. RSA 188-A:1 (supp); Laws 1961, 267:1.

The nub of the first question transferred to this court by the Governor and Council is whether the vote of the chairman of the State Board of Education for the Concord site is illegal because of a conflict of interests. For the purposes of answering this question we accept as true the allegations of fact contained in the resolution of the Governor and Council supplemented by the allegations in the petition for injunction in the Superior Court as set forth in the brief for the city of Manchester on which petition a temporary injunction was denied. From these sources and from undisputed facts contained in briefs filed in this proceeding, the following is a summary of the offices and positions held by the chairman of the State Board of Education.

He is an officer, director, stockholder and attorney for the Concord Electric Company, and attorney for the Public Service Company in Manchester and the Pennichuck Water Works in Nashua — all regulated public utilities in this state. He is a stockholder and was an officer of the Concord Regional Development Corporation, a corporation similar to many others in various parts of the state. He is also director of various other corporations doing business in the state as are presumably other members of the State Board of Education and the Advisory Committee appointed under RSA 188-A:7 (supp); Laws 1961, 267:1.

Acceptance of appointment to the State Board of Education is and for many years has been regarded as performance of a civic duty and it has been customary to appoint men and women who are also engaged in many private, public and charitable activities. They "serve without pay" and the statute specifically provides that they "shall not be technical educators nor professionally engaged in school work." RSA 186:1. There is no command in the educational laws of this state which provides that members of the State Board of Education shall be business hermits or that they must be isolated from all other professional and public duties in order to serve on the board. Although the Legislature has considered a "conflict of interest" statute, it has passed no general legislation in this field. Cf. RSA 95:1. Specific prohibitions have been employed in isolated instances such as the statute forbidding a judge to be "an officer in any railroad corporation in this state" (RSA 492:2) but there is no general statute on the subject. See Eisenberg, Conflicts of Interest Situations and Remedies, 13 Rutgers L. Rev. 666 (1959); Kaplan & Lillich, Municipal Conflicts of Interests: Inconsistencies and Patchwork Prohibitions, 58 Colum. L. Rev. 157 (1958). Most of the statutory activity in this field has been on the federal level. Note, The Federal Conflicts of Interests Statutes and the Fiduciary Principle, 14 Vand. L. Rev. 1485, 1507 (1961); *United States* v. *Mississippi Valley Generating Co.,* 364 U. S. 520.

There is a conflict of interest when a public officer votes on a matter in which he has a direct personal and pecuniary interest. *Rider* v. *Portsmouth,* 67 N. H. 298, 299; *Rollins* v. *Connor,* 74 N. H. 456. The fact that the chairman of the State Board of Education was a stockholder, officer or attorney for public utilities which may sell additional electricity to the tax-exempt and state-supported technical institute is too attenuated and unsub-

stantial a factor to raise a conflict of interest in this case. See *Opinion of the Justices*, 75 N. H. 613. Nor was his vote illegal because he was connected with the Concord Regional Development Corporation any more than were the votes of other members of the Board for a location and site in their respective cities or areas. Annot. 133 A. L. R. 1257, 1267; Note, Conflict of Interests: State Government Employees, 47 Va. L. Rev. 1034, 1035, 1045 (1961). See Conflict of Interest and Federal Service (Association of the Bar of the City of New York, 1960) 314.

We conclude that the positions held by the chairman of the State Board of Education did not affect the legality of his vote in the selection of the site for the Technical Institute and the answer to the first question is no. *Opinion of the Justices*, 75 N. H. 613.

The second question reads as follows: "Does the fact that recommendations were requested of the Advisory Committee thereby render the action of the State Board of Education in the selection of the site invalid?" The Advisory Committee was established to aid the State Board of Education in the " . . . administration and programming of the technical institute . . . " for the purpose (in the words of the statute) of "assuring expert participation by management, labor, business and education." RSA 188-A:7 (supp); Laws 1961, 267:1. While the recommendation of the Committee as to the selection of a site was not a matter specifically delegated to it by the statute, the Board was free to seek the services of the Advisory Committee in the manner in which it did. The Board was expected to obtain information and advice from all sources and this included the Advisory Committee. The answer to the second question is no.

The third question reads as follows: "Does the fact that injunctive relief has been asked and a hearing on the merits has been ordered but no date has been set, have any bearing on the authority of the Governor and Council to proceed to acquire the land in question as duly authorized by RSA 4:29 and RSA 188-A?" Our answer is "no under the circumstances of this case." So far as we can determine the Superior Court denied the petition for temporary injunctive relief on the assumption that the facts stated in the petition were true. We have made the same assumption in deciding that the vote of the chairman of the State Board of Education was not illegal. Thus, on the present state of the record before us, the Governor and Council,

when requested by the State Board of Education has authority to proceed to carry out a vote of the Board under RSA 4:29 and RSA ch. 188-A (supp).

In answering these questions we cannot and do not express any opinion on the desirability, expediency or wisdom of the choice of a location and site for the Technical Institute. That is not a judicial function or duty.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

August 29, 1962.

*William Maynard,* Attorney General, *Elmer T. Bourque,* Deputy Attorney General and *William F. Cann,* Assistant Attorney General furnished a memorandum.

Memoranda were also furnished by *J. Francis Roche,* city solicitor of Manchester, *Daniel E. Donovan, Jr.,* city solicitor of Concord, *John C. Mongan,* mayor of Manchester, *Mario J. Vagge,* mayor of Nashua, *E. O. Foss,* secretary Nottingham Planning Board, *Alfred D. Rosenblatt* and by other members of the public.